UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

APRIL J. MOORE,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05574-BHS-KLS

REPORT AND RECOMMENDATION

Noted for May 3, 2013

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further administrative proceedings.

                              FACTUAL AND PROCEDURAL HISTORY

        On May 21, 2008, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging in both applications disability beginning June 1, 2006, due

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

REPORT AND RECOMMENDATION - 1

1    to chronic pain, back problems, arthritis, carpal tunnel syndrome ("CTS"), migraines, numbness,

2    depression, and anxiety. <u>See</u> Administrative Record ("AR") 19, 136, 142, 166.  Both applications

3    were denied upon initial administrative review on October 9, 2008, and on reconsideration on

4    March 31, 2009. <u>See</u> AR 19.  A hearing was held before an administrative law judge ("ALJ") on

5    July 8, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a

6    vocational expert. <u>See</u> AR 37-71.

7           In a decision dated October 21, 2010, the ALJ determined plaintiff to be not disabled. <u>See</u>

8    AR 19-32.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals

9    Council on April 30, 2012, making the ALJ's decision the final decision of the Commissioner of

10   Social Security (the "Commissioner"). <u>See</u> AR 1; 20 C.F.R. § 404.981, § 416.1481.  On July 2,

11   2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final

12   decision. <u>See</u> ECF #3.  The administrative record was filed with the Court on September 10,

13   2012. <u>See</u> ECF #10.  The parties have completed their briefing, and thus this matter is now ripe

14   for the Court's review.

15          Plaintiff argues the Commissioner's final decision should be reversed and this matter

16   should be remanded for further administrative proceedings, because the ALJ erred by failing to

17   properly evaluate the medical and lay witness evidence in the record and by failing to properly

18   assess plaintiff's residual functional capacity.  For the reasons set forth below, the undersigned

19   agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that

20   the Commissioner's final decision be reversed and that this matter be remanded for further

21   administrative proceedings.

22                                         <u>DISCUSSION</u>

23          The determination of the Commissioner that a claimant is not disabled must be upheld by

REPORT AND RECOMMENDATION - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him

REPORT AND RECOMMENDATION - 4

or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield <u>v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

The ALJ in this case found in relevant part in regard to the medical opinion evidence in the record as follows:

> In August 2008, Jerry Rusher, M.D., performed a consultative physical evaluation of the claimant, who complained of worsened lower back pain, loss of sensation of the left foot, chronic neck pain radiating to shoulders and upper back, neck stiffness, headache from neck pain, bilateral carpal tunnel syndrome, numbness, pain and stiffness of both hands, and bilateral knee pain and stiffness.  The claimant alleged limitations of bending, lifting, squatting, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, completing tests, concentrating, and using her hands.  She also reported trouble holding onto things and opening jars.  She said she tried to avoid all physical activities because they stirred up her pain.  Dr. Rusher reviewed her medical records and noted that the claimant did not have x-rays of her hands to diagnose osteoarthritis.  However, the doctor noted the MRI scan of the spine and nerve conduction study of the claimant's wrists mentioned above. He also noted Dr. Rusher also noted x-ray images of the cervical spine taken

REPORT AND RECOMMENDATION - 5

in July 2007 showed mild disk disease at C5-6 and mild spondylolisthesis with mild hypertrophic changes at C4-5 with mild foraminal stenosis. Thoracic spine showed minimal dextroscoliosis in the mid thoracic spine, mild disk disease at T7-8. The doctor also noted that an x-ray of the lumbosacral spine showed facet arthropathy at L4-5 and mild spondylolisthesis and mild disk disease at L5-S1. Dr. Rusher noted that the claimant had not had any x-ray or MRI performed of her knees yet and opined that her back pain was probably more limiting at the time. The only medication the claimant reported taking was Tylenol Arthritis. On the day of the examination, the doctor had to help her to get onto the examination table. He noted that she had to struggle a bit to get her right heel up to her left knee but did manage. Her tandem gait was slightly unsteady. Dr. Rusher found some tenderness of the wrists, especially of the right with pain on range of motion. Her right knee was tender. Phalan's test was positive on the right. The claimant was right-handed. Dr. Rusher opined that the claimant could stand/walk/sit 3-4 hours in an 8-hour workday with breaks. She could lift/carry 5 pounds frequently and 10 pounds occasionally. She could only tolerate infrequent use of her hands (Exhibit 4F).

. . .

In October 2008, Joan Miller, M.D., completed a residual functional capacity assessment of the claimant for the [state agency] Disability Determination Services (DDS). Dr. Miller reviewed the claimant's entire medical record and opined that she retained the physical functional capacity to sit 6 hours in an 8-hour workday with normal breaks. She could stand/walk 2 hours in an 8-hour workday. She could lift/carry 10 pounds frequently and 10 pounds occasionally. She was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. She had some manipulation limitations in handling/gross manipulation and she was limited to repetitive wrist motion frequently (i.e. 1/3 to 2/3 of the workday, cumulatively but not continuously). She was to avoid concentrated exposures to vibration. Dr. Miller opined that the claimant's allegations of her motor impairment from radiculopathy or myelopathy was not presented. She retained the capacity to stand/walk for 2 hours on a sustained basis. There was also not [sic] evidence to support a sitting limitation. The claimant was positive for CTS from the Tinel's and Phalen's tests only. X-ray images of bilateral hands showed normal result and examination evidence for hand function was normal (Exhibit 6F).

. . .

I give great weight to the [Dr. Miller's assessment] because it is the most thorough and most consistent with the medical evidence of record as a whole. Even though newer medical reports were submitted to the current record (*See* Exhibits 18F, 19F, and 20F) after Dr. Miller made her assessment in October 2008 and thus, Dr. Miller did not have the benefit of reviewing the newer

REPORT AND RECOMMENDATION - 6

medical reports, the newer record [sic] do not show that the claimant is more limited physically than determined by [Dr. Miller].

I give little weight to Dr. Rusher's opinion made in August 2008 regarding the claimant's physical residual functional capacity because Dr. Rusher did not have the benefit of reviewing the other medical reports contained in the current record.  Moreover, the doctor's own report fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact that limited with her abilities to lift/carry and use her hands, and the doctor did not specifically address this weakness.

AR 25-26, 28.  Plaintiff argues the ALJ erred in giving great weight to the opinion of Dr. Miller, but only little weight to that of Dr. Rusher.  The undersigned agrees.

As plaintiff notes, in coming to the conclusions that they did regarding plaintiff's ability to function, Dr. Miller and Dr. Rusher reviewed medical records on file for essentially the same time period. See AR 251, 269.  While as discussed above, a non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record," the opinion of an examining physician is "entitled to greater weight than [that] of a nonexamining physician." Tonapetyan, 242 F.3d at 1149; Lester at 830-31.  This implies, as plaintiff argues, that where a non-examining physician and an examining physician rely on the same clinical findings, but come to different conclusions based on those findings, the ALJ should give greater weight to the conclusions of the examining physician.

In Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), the Ninth Circuit overturned the district court's rejection of the claimant's argument that the ALJ erred in discounting the findings of the claimant's treating physicians and instead relied on the opinion of a physician who saw the claimant one time, noting "the *findings* of the non-treating physician were the same as those of the treating physician" and it was only "his *conclusions* that differed." Id. at 501 (emphasis in original).  Later in Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), the Court of Appeals relied on its prior holding in Murray to find as follows:

REPORT AND RECOMMENDATION - 7

> When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence."  As we explained in *Murray*, "In this case, ... the *findings* of the non-treating physician were the same as those of the treating physician. It was his *conclusions* that differed.... If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." 722 F.2d at 501-02 (emphases in original). By contrast, when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence." *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985); *accord Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Magallanes*, 881 F.2d at 751; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985) (as amended). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen*, 749 F.2d at 579, or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

Id. at 632.  Although neither Murray nor Orn deal specifically with the situation at hand in this case – i.e., where an examining and non-examining physician rely on the same medical records, but come to different conclusions – the same reasoning applies.  That is, where the record shows two medical sources have relied on the same clinical findings and differ only in the conclusions they draw therefrom, it is improper to give greater weight to the medical source to which lesser weight is due in general, without "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id.

Dr. Rusher and Dr. Miller issued their opinions approximately two months apart in 2008. Thus, although as the ALJ correctly notes, "Dr. Rusher did not have the benefit of reviewing the other medical reports contained in the record" (AR 28), the same is basically true in regard to Dr. Miller with respect to the same period.  The ALJ, however, did not discount Dr. Miller's opinion on this basis.  Nor did the ALJ provide specific and legitimate reasons for not doing so.  Because both physicians thus had substantially the same medical records at their disposal to review, it was therefore improper for the ALJ to defer to the opinion of Dr. Miller on the basis of Dr. Rusher's

REPORT AND RECOMMENDATION - 8

1    lack of access to other medical reports in the record.

2        The statement that Dr. Miller's conclusions are "the most thorough and most consistent

3    with the medical evidence of record as a whole" (AR 28) is also insufficiently supported by the

4    ALJ.  First, those conclusions are provided on a check-the-box form, which are not favored in

5    the Ninth Circuit.  See Murray, 722 F.2d at 501 (expressing preference for individualized medical

6    opinions over check-off reports).  Second, while Dr. Miller also provided a summary of the

7    evidence upon which she based her conclusions that admittedly is fairly detailed (see AR 269),

8    so too did Dr. Rusher (see AR 251-53).  The ALJ does not explain why she found Dr. Miller's

9    conclusions – which again are in check-the-box form with only one page of written conclusions

10    and record summary – more thorough than the seven page narrative report Dr. Rusher provided.

11    See AR 251-57, 262-69.  Nor does the ALJ explain – again given that both physicians had access

12    to essentially the same medical records – why Dr. Miller was in a better position to interpret and

13    draw conclusions from Dr. Rusher's own examination findings.

14        It is not at all clear, furthermore, that Dr. Miller's conclusions are more consistent with

15    the clinical findings in the record than those of Dr. Rusher.  Although the ALJ did summarize in

16    her decision the medical evidence in the record concerning plaintiff's physical impairments, she

17    gave no explanation as to why that evidence supported Dr. Miller's conclusions but not those of

18    Dr. Rusher. See AR 24-28.  Such lack of explanation clearly is inadequate to give less weight to

19    the opinion of an examining physician. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988)

20    (noting ALJ "must do more than offer his [or her] conclusions" regarding the medical evidence

21    in the record, rather "[he or she] must set forth his [or her] own interpretations and *explain* why

22    they, rather than the [examining physician's], are correct.").

23        Dr. Rusher found the medical records on file and his own clinical findings supported the

REPORT AND RECOMMENDATION - 9

1   conclusions he made.  Dr. Miller came to different conclusions.  Without an explanation from the

2   ALJ as to *how* the "medical evidence of record as a whole" is more consistent with those of Dr.

3   Miller, the Court has no basis on which to determine the propriety of the ALJ's findings here.

4   The same is true with regard to the ALJ's statement that "the newer record [sic] do not show that

5   [plaintiff] is more limited physically than determined by" Dr. Miller. AR 28.  As pointed out by

6   plaintiff, that evidence contains objective and subjective reports of continued impairment, as well

7   as pain and other impairment-related symptoms. See, e.g. AR 352, 387, 393.  While this does not

8   necessarily establish the existence of specific work-related limitations that are more severe than

9   those assessed by Dr. Miller, neither are they necessarily supportive of them or inconsistent with

10  the ones Dr. Rusher assessed.

11         The same error is present in the ALJ's statement that Dr. Rusher's "own report fails to

12  reveal the type of significant clinical and laboratory abnormalities one would expect if [plaintiff]

13  were in fact" as limited as Dr. Rusher found in regard to plaintiff's ability to lift, carry and use

14  her hands. AR 28.  Dr. Rusher's evaluation report, however, contains clinical findings indicating

15  decreased range of motion and tenderness in plaintiff's wrists, as well as decreased grip strength,

16  motor strength and sensation in her upper extremities. See AR 255-56.  It is not at all clear how

17  the ALJ determined that these findings are unsupportive of Dr. Rusher's conclusions – given that

18  Dr. Rusher himself, a certified medical doctor, found them to be so – other than her likely relying

19  on the conclusions of Dr. Miller to do so.  Given that the record contains no other examining or

20  treating physician opinion as to plaintiff's ability to lift, carry or use her hands – and, once more,

21  given that Dr. Miller did not appear to base her conclusions on any clinical findings Dr. Rusher

22  did not also consider – it seems the ALJ improperly substituted her opinion for that of Dr. Rusher

REPORT AND RECOMMENDATION - 10

in finding as she did here.[3]

II.      The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written lay witness statements from plaintiff's mother and boyfriend, in which they set forth their observations of her symptoms and limitations. See AR 178-85, 208-12.  The ALJ did not mention or discuss these statements in her decision.  Plaintiff argues, and the undersigned agrees, that the ALJ erred in failing to do so.  Defendant argues there is no error here, because the observations of the lay witnesses are substantially similar to the testimony of plaintiff, which the ALJ rejected.  Defendant is correct that where a claimant's testimony has been properly rejected, lay witness testimony that is similar thereto may be rejected for the same reasons used to reject the claimant's testimony. See Valentine v. Commissioner Social Security Administration, 574 F.3d 685 (9th Cir. 2009)[4]; see also Molina v. Astrue, 674 F.3d 1104, 1114

---

[3] See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

[4] In Valentine, the Ninth Circuit held in relevant part:

REPORT AND RECOMMENDATION - 11

1    (9th Cir. 2012).

2            As noted by plaintiff, however, in both <u>Valentine</u> and <u>Molina</u>, the ALJ at the very least

3    mentioned the lay witness testimony in the record, even though germane reasons may not have

4    been expressly provided for rejecting it.  <u>See</u> 674 F.3d at 1114; 574 F.3d at 694.  Indeed, to allow

5    rejection of lay witness testimony without any mention thereof would run afoul of the Ninth

6    Circuit's clear pronouncement that lay witness testimony "is competent evidence that an ALJ

7

8    *must* take into account," unless the ALJ "*expressly* determines to disregard such testimony and

9    gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir.

10   2001) (emphasis added).  This the ALJ did not do, and thus she erred.

11           That being said, the undersigned agrees with defendant that the ALJ's error in failing to

12   mention or discuss the lay witness evidence in this case was harmless.  In <u>Molina</u>, the Ninth

13   Circuit held that "[w]here lay witness testimony does not describe any limitations not already

14

15   described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's

16   testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior

17   harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be

18   prejudicial per se." 674 F.3d at 1117.  In that case, the Court of Appeals found that "[a]lthough

19   the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such

20   error was harmless given that the lay testimony described the same limitations as [the claimant's]

21

22   own testimony, and the ALJ's reasons for rejecting [that] testimony appl[ied] with equal force to

23   _____

24           [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's] own
         subjective complaints.  Unsurprisingly, the ALJ rejected this evidence based, at least in part,
25       on 'the same reasons [she] discounted [the claimant's] allegations.'  In light of our conclusion
         that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own
26       subjective complaints, and because [the lay witness's] testimony was similar to such
         complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.

<u>Id.</u> at 694.

REPORT AND RECOMMENDATION - 12

the lay testimony." Id. at 1122.

As noted by defendant, plaintiff has not challenged the ALJ's determination that she was not fully credible regarding her allegations of disabling symptoms and limitations. Accordingly, any challenge thereto is indeed waived.[5] The ALJ discounted plaintiff's credibility on the basis that she pursued only conservative treatment for her allegedly disabling pain, that the medical evidence in the record did not support her claims of significant medication side effects, and that she did not pursue surgery recommended to treat the pain in her wrists. See AR 28. These are all proper bases upon which a claimant's credibility may be rejected.[6]

As with plaintiff's own subjective complaints, the symptoms and limitations the two lay witnesses in the record observed are based largely on the allegedly disabling effects of her pain and related impairments, and do not differ significantly from those complaints. See AR 40-44, 48, 50-54, 155-61, 166, 178-85, 187, 190-91, 203, 208-12. The ALJ's above-stated reasons for rejecting plaintiff's credibility, therefore, are equally applicable to the observations of the lay witnesses here. Plaintiff argues Molina should be distinguished because in addition to the fact that the ALJ in this case failed to mention the lay witness statements, the lay witness evidence in that case was inconsistent with the claimant's reported activities and with the observations of an

---

[5] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

[6] See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (credibility may be discounted on basis that claimant's complaints are "inconsistent with clinical observations" ); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking or following a prescribed course of treatment, or finding that proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony").

REPORT AND RECOMMENDATION - 13

examining physician.  First, as discussed above, the ALJ's failure to mention the lay witness evidence goes to the issue of error, not the harmfulness thereof, and accordingly the ALJ erred in failing to mention it in this case.

Second, the essential holding of <u>Molina</u> is that error in failing to mention such testimony will be deemed harmless if the lay witnesses describe the same symptoms and limitations as the claimant, and the reasons the ALJ gave for rejecting the testimony of the claimant apply equally to that of the lay witnesses.  In other words, it matters not that the specific reasons that were at issue in <u>Molina</u> are different from those that at issue in the case at hand.  Except for some small differences in detail, furthermore, the descriptions of the pain and associated limitations plaintiff experienced provided by her boyfriend and mother are essentially the same as those described in plaintiff's own testimony and self-reports.  In addition, because the lay witness testimony in this case is – as it is with plaintiff's own testimony and self-reports – based for the most part, if not entirely, on plaintiff's alleged disabling pain, medication side effects and related symptoms, the reasons the ALJ gave above for discounting plaintiff's credibility "apply with equal force" to the observations of her boyfriend and mother. <u>Molina</u>, 674 F.3d at 1122.

An ALJ's error in failing to properly consider lay witness evidence is not harmless only if the Court finds "no reasonable ALJ, when fully crediting [that] testimony, could have reached a different disability determination." <u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1056 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); <u>see</u> <u>also</u> <u>Parra v. Astrue</u>, 481 F.3d 742, 747 (9th Cir. 2007) (any error on part of ALJ would not have affected "ALJ's ultimate decision" and thus was harmless). For the reasons discussed above, the undersigned finds this to be the case here, as no reasonable ALJ would have reached a different disability determination in light of the substantial similarity

REPORT AND RECOMMENDATION - 14

of plaintiff's testimony and the two lay witness statements, and the reasons the ALJ provided for discounting the former.

III.    The ALJ's Residual Functional Capacity Assessment

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity:

**. . . to perform less than sedentary work . . . She can sit 6 hours in an 8-hour workday with normal breaks.  She can stand/walk 2 hours in an 8-**

REPORT AND RECOMMENDATION - 15

**hour workday.  She can lift/carry 10 pounds frequently and 10 pounds occasionally.  She has some manipulative limitations in handling/gross manipulation and she is limited to repetitive wrist motion frequently (i.e. 1/3 to 2/3 of the workday, cumulatively but not continuously).  She is to avoid concentrated exposures to vibration, fumes, odors, dusts, gases, and poor ventilation.  She can perform both simple repetitive tasks and detailed complex tasks.  She can accept instructions and directions from supervisors.  She can interact appropriately with co-workers and the public.  She can perform tasks on a consistent basis without special instruction.  She can complete a normal 8-hour workday or 40-hour workweek on a regular and continuing basis without any disruptions.**

AR 23-24 (emphasis in original).  Plaintiff argues this RFC assessment fails to accurately take into account the limitations she has in terms of her ability to reach and handle.  The undersigned agrees that in light of the ALJ's errors in failing to properly evaluate the medical evidence in the record, it cannot be said at this time that that assessment is completely accurate.  For example, as noted by plaintiff, Dr. Rusher concluded she could "tolerate only *infrequent* use of her hands" (AR 257 (emphasis added)), which clearly is at odds with the ALJ's finding that she was able to engage in repetitive wrist motion *frequently* (see AR 24).  While the undersigned disagrees with plaintiff that the medical evidence in the record dated subsequent to the opinions of Drs. Rusher and Miller necessarily shows significant evidence of a change in her condition resulting in additional work-related limitations (see, e.g., AR 352, 387, 391-93), the ALJ's failure to properly evaluate the medical evidence discussed above is sufficient to find the ALJ's residual functional capacity assessment is not supported by substantial evidence in this case.

VIII.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

REPORT AND RECOMMENDATION - 16

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical evidence in the record concerning plaintiff's physical residual functional capacity, and therefore her ability to perform other jobs existing in the national economy and thus whether or not she is disabled (see AR 31-32), remand for further consideration of these issues is appropriate.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse the Commissioner's final decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file

REPORT AND RECOMMENDATION - 17

1    objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>,

2    474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

3    is directed set this matter for consideration on **May 3, 2013**, as noted in the caption.

4         DATED this 16th day of April, 2013.

5

6

7

8                                                      Karen L. Strombom
                                                       United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 18